et al. Arguing for the appellant, Peoples National Bank, is David Niemeyer. Arguing for the appellee, Fidelity & Deposit Co. of Maryland is Joel Van Der Vliet. Arguing for the appellant, Peoples National Bank, is David Niemeyer. Arguing for the appellant, Peoples National Bank, is Joel Van Der Vliet. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, gentlemen. Good morning, Your Honor. Good morning. Mr. Niemeyer, are you ready to proceed on behalf of Peoples National Bank? I am, Your Honor. All right, you may do so. Thank you. And good morning, and may it please the court. This case involves an insurance coverage dispute. At issue is the following question. Did Peoples National Bank have to provide notice of an uncovered claim? The answer is no. In Illinois, only covered claims have to be tendered to insurance carriers. Here, it is undisputed that the breach of contract claim filed by the Newmans back in February of 2003 was an excluded claim. Reporting it would not have triggered coverage under either of the policies at issue. In fact, Fidelity and Deposit Company of Maryland admits that it would have denied this claim had it been reported back in 2003. Despite these facts, F&B argues that P&B should have tendered this claim back in 2003. Anyway, during the first policy period, the circuit court agreed with this reasoning and granted judgment on the pleadings in favor of F&B. But, Your Honor, this is not required under Illinois law, and it is not required under the policies at issue. F&B fails to cite a single case from Illinois or any other jurisdiction holding that insured must tender an uncovered claim to an insurer, even under a claims-made policy. There's a reason for that. If the circuit court's ruling is correct, it would place additional unintended burdens on both insureds and insurers. Insureds, such as P&B, would have to report every conceivable wrongful act or uncovered claim, and the off chance that it develops into a covered claim years later. But that can't be the case, because that simply doesn't make sense. Why would an insurer want to know about each and every uncovered claim? When a claim is submitted to an insurance company, an insurance company is required to conduct a thorough investigation of that claim. And if the claim is denied, and the policy includes a duty to defend, an insurance company is also required to file a declaratory judgment action regarding coverage. All of this is going to take a tremendous amount of time and resources. Does F&B really want this additional burden? Do they really want to spend all these additional expenses and time investigating uncovered claims and filing declaratory judgment actions? I don't think so. From an insured's perspective, what was P&B supposed to do? Report all contract claims that no doubt are excluded from coverage? P&B as a bank encounters contract issues and disputes on a daily basis. For example, in foreclosure cases. Is it supposed to report all these matters to its insurer in the event that one of these matters turns into a covered claim sometime down the road? No, that simply doesn't make sense. The court should be mindful of the potential consequences of the circuit court's ruling. For example, attorneys routinely advise their clients regarding coverage that is available under a particular policy for a particular claim. Under the circuit court's ruling, attorneys may be exposed to legal malpractice actions if they wrongly advise their clients not to report a breach of contract claim and later amends its pleadings to allege a covered claim. The circuit court's ruling, if allowed to stand, would drastically reshape the landscape of insurance law in the state of Illinois. This ruling should be reversed. The circuit court erred in several respects in granting judgment on the pleadings in favor of F&B. First, the court failed to properly consider whether P&B's notice was reasonable under the facts and circumstances of this case. Under Illinois law, a delay in providing notice is not an absolute bar to coverage, provided that the insured's reason for the delay was justifiable. An insured's reasonable belief in non-coverage under a policy is an acceptable excuse for the failure to give timely notice. And whether the insured reasonably believed a lawsuit was not covered by a policy is a question of factor honors. It is not a question of law. Now, the Illinois Supreme Court has set forth a five-factor test when assessing the reasonableness of an insured's notice. This five-factor test applies to all insurance policies, including claims-made policies. There are at least two cases cited in the parties' briefs in which this five-factor test was applied to a claims-made policy. These factors include the following. The specific language of the policy's notice provision. The insured's sophistication in commerce and insurance matters. Three, the insured's awareness of an event that may trigger insurance coverage. Four, the insured's diligence and reasonable care in ascertaining whether policy coverage is available. And five, whether the insured's delay caused prejudice to the insurer. Your honors, we've done our research, and we found Illinois state and federal courts have applied the same five-factor test no fewer than 32 times in the last two decades. This is a very well-established test. There is no reason to apply a different test to the policies at issue in this case. Here, the circuit court failed to properly consider each of these five factors before granting judgment on the pleadings. Instead, the court focused almost exclusively on the first factor, the specific language of the notice provision. But this factor alone is not dispositive of the analysis. The court gave little weight to P&B's explanation for not providing notice earlier, even though this reason is of primary importance, according to one court. P&B's delay in reporting this claim was justifiable. The NUMAS third-party complaint, when it was filed in February of 2003, included only one count, and that was for breach of contract. P&B reasonably believed that the breach of contract claim was excluded from coverage under the policies, so it didn't need to report it. Why is that? Well, under Illinois law, insurance policies generally do not cover breach of contract claims. And here, the specific policies exclude breach of contract claims. That's found in Exclusion G in the policies, Your Honor. P&B believed and pleaded that tendering this breach of contract claim to F&D would have been a futile act, and the law does not require a futile act. Futility is a viable defense in insurance coverage disputes, and that was found by the Illinois Supreme Court. The utility of giving notice under contract is also a question of fact. It is not, as the circuit court found, solely a matter of contract interpretation. Your Honor, I wanted to ask you a question about that. The court did find that the third-party complaint filed in 2003 was a question of contract interpretation and not a factual dispute. Also, it found the question of indemnification was a question of contract interpretation. What do you think about that portion of the court's order? I don't agree with that portion of the court's order, Your Honor. Why not? Because futility at base is a question of fact. Here, there is a factual dispute of whether P&B would have given notice in 2003. What would have happened? The futility defense and allegation in the pleadings were expressly denied by F&D in its pleadings, so there is a factual dispute that is raised in the pleadings in this case. What effect, if any, does a factual dispute have as it relates to judgment on the pleadings? Because there is a factual dispute raised in the pleadings, it was inappropriate for the circuit court to grant judgment on the pleadings in favor of the movement and against the non-movement. That would violate the standard review for motion for judgment on the pleadings, Your Honor, in which all facts and reasonable inferences from those facts must be drawn in favor of the non-moving party. Not the moving party is what the circuit court did in this case. The court below found that providing notice of a claim is not futile if the purpose of the claim is to ensure one has complied with the notice requirements. But clearly, the purpose of the notice requirement is to report claims that would trigger coverage. What other purpose is there? The circuit court even recognized that notifying F&D of the breach of contract claim in 2003 may be futile if one considers the purpose of reporting is to obtain coverage of a claim. A policy requirement of giving notice obviously refers to providing notice of a covered claim by the policy. It cannot be said that insurance care is intended for every claim to be reported to it. The Newmans did eventually bring a covered claim for conversion and breach of fiduciary duty in the fall of 2004, and this is when P&B timely tendered this claim to F&D. Your Honor, the circuit court also failed to consider other provisions of the policies which extend coverage for wrongful acts or litigation that predate the policies. The parties intended for continuous and uninterrupted coverage of the claims by their renewal. The intent of the parties is reflected in the prior impending litigation dates and the declaration pages, as well as the tail provisions. This court recognized just last year that claims made policy may cover acts and omissions occurring before the policy period. And for prior acts, the policy may provide full retroactive coverage, or it may only cover claims arising out of acts and omissions after the retroactive date specified in the declarations. I would submit that is what we have here. The declaration pages and supplemental declarations, including prior and pending litigation dates, Your Honors. The prior impending litigation date for an entity claim under the policies is February 1 of 2001. The prior impending litigation date for the lender's liability claim is April 15 of 2001. Both of these dates are well before the Newmans filed their breach of contract claim against P&B in February of 2003. The inclusion of these dates in these declarations and supplemental declarations reflect the parties intent to provide coverage for lawsuits that existed before the 2004 to 2007 policy period that would eventually develop into a claim that was covered by that same policy. And that's what we have here, Your Honors. Although the Newmans' third-party action was filed in February of 2003, it did not include a covered claim. A covered claim was not alleged until the Newmans amended their third-party complaint in the fall of 2004. F&D has offered no legitimate reason for the inclusion of these prior impending litigation dates in the policies. And these dates clearly serve a purpose. F&D contends that the purpose of these dates is for Exclusion 5A. But this exclusion was replaced and superseded by amended Exclusion 5A, which makes no reference to the prior impending litigation dates. These declaration pages are part of the policies, and every provision of the policy is intended to serve a purpose. F&D's explanation would render these prior impending litigation dates meaningless and mere surplusage. And again, these dates are included under both policies, the 2001 to 2004 policy and the 2004 to 2007 policy. They weren't a mistake. They are included for a reason. Now, the Extended Reporting Clause, or TAIL provision of the 2004 to 2007 policy, also shows that the parties intended for continuous and uninterrupted coverage of claims by their seamless renewal. Now, the TAIL provision covers any wrongful act arising during the policy period that is reported during the one-year extended reporting period. Such provisions are made so that the insured, which now has a new policy with a different insurer, may report a claim arising during the extended reporting period that actually occurred prior to the end of the policy. Was there evidence that payment for the TAIL was made? No, there's no evidence of that. And again, we're on a motion for a judgment of pleadings, and that wasn't alleged in the pleading strata. What wasn't alleged? That there was a TAIL? Whether there was a payment made for the TAIL provision. But there was an alleged TAIL that was applicable to the coverage? Well, there's a TAIL provision, Your Honor, that says that if you decide not to renew, you can pay a 75% premium and you have an extended one-year reporting period. I didn't see that, though, in the pleadings, that there was an allegation of a TAIL. In fact, I didn't see where anybody really referred to this. The TAIL provision was referenced in our opposition to the motion for judgment of pleadings, Your Honor. And our argument is that by renewing the policy in 2004, that extended the TAIL provision. No such extended reporting period are required for renewals because the policy continues in place. It provided for continuous and uninterrupted coverage. So when do you think the TAIL would have applied? In 2004? Correct. And it would have extended from April 2004 to April 2005. But that wasn't a part of any pleading? Correct. No affirmative matter or anything like that? That's correct. It looks like I am out of time. Yes, you are. I'm sorry. But the justices do have an opportunity to ask you questions, Mr. Niemeyer. Justice Welch, any questions? No questions. All right. Justice Barberis? No, thank you. All right. Mr. Niemeyer, you will have a few moments, minutes to respond to Mr. Vandervliet. Vandervliet, Your Honor. Thank you. Okay. So let's hear from Mr. Vandervliet now, if we could. Thank you, Justice Gates. Thank you, Your Honor. May it please the court, Joel Vandervliet for Fidelity and Deposit Company of Maryland. The issue in this case is whether coverage was triggered for a lawsuit against People's National Bank under either of two claims made and reported insurance policies. Coverage under those policies can be triggered only if two threshold conditions are met. First, the claim must be made against PNB during the policy period. And second, the claim must be reported to F&D within 30 days of the expiration of the same policy period. Policy period for the first policy ran from 2001 to 2004, and the policy period for the second policy ran from 2004 to 2007. The underlying claim at issue was commenced against PNB in February of 2003 during the term of the first policy, and that's not a matter of dispute. It's also undisputed that PNB did not report the Newman action before October of 2004, which was more than 30 days after the first policy period expired. Under these circumstances, circuit court ruled that neither policy has been triggered. The Newman action was a claim first made under the 01-04 policy, but it was not reported to F&D within 30 days. And because it was filed in 2003, the Newman action was not a claim first made during the 04-07 policy period. Illinois courts enforced the clear, unambiguous terms of contracts as written, including insurance contracts. Courts recognized that the reporting requirements in claims made in reported insurance policies are the essence of those policies' coverage. And therefore, they are strictly construed, because to excuse this requirement for coverage would alter a basic term of the insurance contract. Illinois courts and federal courts applying Illinois law have addressed the fact pattern presented by this case. A complaint filed during the term of the first of two successive claims made in reported insurance policies, that complaint is amended during the second policy period, and notice is first provided to the insurer during the second policy period. Those cases include Continental Casualty v. Cuda of the 1st District, Hanover Insurance Company v. R.W. Duntiman of the Northern District of Illinois, and National Union v. Baumann of the Northern District of Illinois. Those courts universally reached the same conclusion as the circuit court did here. Coverage has not been triggered under the first policy, because the insured failed to comply with the first policy's reporting requirement. Your Honor, we are not asking to reshape Illinois law as counsel suggested. We are merely asking the court to apply the policy terms as written, consistent with Illinois law. The Newman action is not covered under either policy, because it was not a claim that was both made and reported during either policy period. Under the terms of the policies and well-settled Illinois law, that is all that matters. The claims made and reported policies were never triggered. This is the straightforward, inescapable conclusion reached by the circuit court, and PMB does not dispute the timeline or the terms of the policies, which are the only material facts. Instead, PMB raises a number of meritless arguments that have no basis in the insurance contracts or Illinois law. Mr. Vander Lee, I want to ask you the same question. It seems to me that on page, and I'm looking at page A5 at the very last paragraph, it seems to me that in the court's order, there may have been a wandering into a factual dispute. What do you think about that? Do you think these are issues of fact? That is, whether the claim must be reported is a question of contract interpretation and whether it would have been futile. The issue of futility, is that a contract or fact interpretation? Your Honor, that is a matter of contract interpretation. PMB has identified no factual dispute with respect to its futility defense. The party's disagreement, whether compliance with the reporting requirement would have been futile, is a question of insurance policy interpretation, and that's a question of law. No court has recognized this futility defense in the context of the claims made and reported insurance policy, and the policies very clearly and plainly require notice of claims by a date certain, and the circuit court correctly found that timely reporting the Newman claim to F&D would not have been futile, because that's a basic requirement to trigger coverage under these policies. So, if I have a homeowner's policy and get in an auto accident, is it your position that I should report the auto accident to my homeowner's policy? If there's no coverage? No, it's not my position, Your Honor. Typically, homeowner's policies are not written on a claims made and reported basis, if it were. Well, what's the difference whether it's claims made or occurrence? Assume it's claims made. I mean, isn't the bank saying that, look, we knew this wasn't covered, it was not a coverage question, so why would we make the report? Well, the reason to make the report is because it's a threshold requirement of coverage, and if it's not reported, then that is correct, it is not covered. So, your position would be that if I get in an auto accident, I should report it to all my insurance carriers? Like, if I have a claims made health life insurance policy, I should make a reporting? The position is, if it's a claims made and reported insurance policy, then in order to secure coverage for a claim under that policy, then yes, the claim needs to be reported. Even though there may be no coverage? Correct. Okay, I'm sorry to interrupt.  The bank's position on this point is a defense based on a reasonable belief that a claim is not covered. That's a defense that has been rejected in the context of claims made and reported policies because the reporting requirements of claims made and reported policies are strictly construed. And that's because of the purpose of the reporting requirement in these types of policies. The reporting requirement in claims made and reported policies defines the scope of coverage, and its purpose is to eliminate an unlimited reporting tail, where the insurer could be exposed to indefinite future liability for claims long after the insurance policy has expired, which can happen with traditional occurrence based policies. To accomplish this, claims made and reported policies, like the policies at issue, provide a date certain on which the insurer knows it is no longer liable under the policy, which provides actuarial certainty that allows the insurer to easily identify risks and know in advance the extent of its claims exposure and compute its premiums with greater certainty. For these reasons, claims made policies cost less to insurers than occurrence policies. On the other hand, the purpose of notice provisions in occurrence policies are to give the insurer time to investigate the claim for defense or settlement. They do not define the scope of coverage. This is the reason that the reasonableness test set forth by the Illinois Supreme Court in Country Mutual versus LaVorse Marine does not apply to claims made and reported insurance policies. The factors Mr. Niemeyer set forth, based on that opinion, can include an insurer's reasonable belief that a claim is not covered or prejudice to the insurer based on late notice. Courts universally recognize that those factors have no application in the context of claims made and reported insurance policies because the reporting requirements in those policies are essential to the scope of coverage and serve a fundamentally different purpose. Let me stop you for a second, please, just so that I'm clear on this. With regard to the claim that PNB did not, that they determined they didn't need to make notice of a claim for, and you're saying that they were required to make that notice, are you suggesting that had they have made the notice at the time, it would have been a covered event? Well, subject to the other terms of the policy, Your Honor, but it would have, had they reported the claim, then they would have met the threshold. Okay, I'm not trying to get to the threshold, I'm trying to get to the end of it. All right. Did FNB's decision, was it correct, would they not have been covered under the policy had they reported it? Had they reported the claim until the claim was amended, and while the only cause of action was for breach of contract, there is an exclusion in the policy for breach of contract, and there is case law that breach of contract claims are not covered under insurance policies. So it would not have been a covered claim at that point in time. That's correct. Okay. So their assessment was correct, essentially, in that there was no need to report a claim that would not be covered. But for the threshold aspect, and you're suggesting that with the amended complaint, that was a covered, that is something that the policy would cover? Well, to be clear, we dispute coverage. That's not an issue here today with respect to the claim. But our position is that the claim, under the definition of the policy, the claim is the entire lawsuit. It's the litigation commenced. Correct. And that claim was made in 2003, and therefore the claim needed to be reported during the policy period in which it was made, because a claim needs to be both made and reported in the same policy period. In order to trigger coverage. But in follow-up to Justice Barberas, and I was trying to get a little bit of this earlier, the claim wouldn't have been covered in 2003. It wouldn't have been covered until, hypothetically, until it was amended. Correct? That may be correct, Your Honor, yes. Okay. But under the actual facts, coverage was never triggered in the first instance, because it was not timely reported as required by the policy. But there never was a claim until after it was reported. There wasn't a claim at that time. So how could you report a claim if there's no claim? That's what I don't understand. There was a claim at that time, Your Honor. The claim is defined as... A non-covered claim. Correct? A... That is correct. It was a claim... Non-covered. The cause of action was breach of contract. That's a non-covered claim, correct? Breach of contract. That's correct. So there was no liability until after the amended claim was filed. Hypothetically. Right. There was no... I'm sorry, Your Honor. I don't follow. I think Justice Welch is asking there was no potentially covered claim hypothetically. I know you don't want to admit coverage until after it was amended. I think that's right, Your Honor. We don't dispute that the claim was for breach of contract. But that's... The issue under the policy is not what the cause of action is. The issue is, was there litigation commenced by the filing of a complaint against the insured? And under the insuring clause, was that for a wrongful act? A wrongful act is broadly defined as any act, error, or remission. And certainly the allegations in that first complaint don't meet those definitions. It was a claim. It was a claim for a wrongful act, and therefore it needed to be reported in order to trigger coverage under the policy. What about the amended complaint? I'm sorry. No, go ahead. What about the amended complaint? What was the notice on that? There is nothing in the record that the amended complaint was noticed. P&B alleges and F&D assumes for purposes of the motion for judgment on the pleadings that notice was provided of certain discovery that was served in the case shortly before the amended complaint was filed. Well, are you saying that notice was proper or improper as to the second, or as to the amended complaint? Well, Your Honor, respectfully, I think the inquiry is notice of the claim, and that's what's required by the policy. Well, there were additional claims. I'm sorry. There were additional claims added in the amended complaint beyond breach of contract. So as to those claims and whether there was coverage for the additional claims, what is your position? Well, Your Honor, our position is, I think you're referring to claims in the general sense of litigation, accounts, legal theories. Under the policy, though, that's not how claim is defined, and that's not the type of claim we're talking about when we're talking about claims made and reported. The policy defines claim as a lawsuit commenced by the filing of a complaint. So the claim at issue here, there are not multiple claims at issue. The claim is the entire lawsuit, and we've argued for a listopel as well based on the Seventh Circuit's Market Street opinion where PNB argued that there could be multiple claims within this one lawsuit under the same insurance policy language at issue here. The court rejected that argument and said the claim is the lawsuit, and it commenced in 2003. So just so that I'm tying back up to Justice Kate's analogy and her question, I was a little confused at first, but Justice Kate, I'm not sure I'm asking the appellee this question or if I'm asking you the question, but I believe she had suggested that if someone had a car accident and they had a life insurance policy, she said, well, should you report the car accident under the life insurance policy even though no one died? Obviously, there's no coverage in a life insurance policy unless someone dies, so the answer would be no. However, if someone died months later from injuries sustained in the car accident, she would have had to have reported something. She still doesn't have a claim until someone dies from that car accident. So I guess what I was trying to find out was I still have a little bit of a difficulty with reporting a claim that you know does not trigger coverage until you discover something that might, and you amend the complaint to include that something that might extend coverage or include coverage. So you're saying that the policy, though, before you ever know that there's something involved that might trigger coverage, as soon as something occurs, even though you know at that time it doesn't trigger coverage, you have to report it in order to be a valid claim. Does that poorly summarize where your position is? I think that's generally fair, Your Honor. Your Honor, one thing I want to point out is life insurance policies are not liability insurance policies. No, I understand that. There's no analogous concept of claims made in reported insurance. Similarly, auto liability policies are written on a occurrence basis. So I think there's some disconnect there. I recognize that, and I think I'll just use that example. No, no. I'm just trying to point out why that's not the same as in this instance talking about a lawsuit that was filed rather than an accident or a death or some other insurable event under a different type of insurance policy. But, Mr. Vanderleet, the court's order that's being appealed from does refer to the third-party complaint filed, the amended third-party complaint filed in 2004 and makes a finding that it was part of the entire civil action commenced in 2003. So the court seems to take up many more facts than you are. You want us to take a very narrow view that there was no claim made in or no notice given of a claim made in 2003 and so within the policy period, and that's it. But the court's order seems to go well beyond your argument. What do you want us to do with that? I'm not sure I follow, Justice Kagan. With respect to the 2001-2004 policy, which is when the claim was made, it was not timely reported, and that's what we've been discussing. I think what you're referring to in the judge's order is that the amended complaint filed in the 2004-2007 policy period was not a new claim. So there was not a claim made during that policy period. So in the first policy period, the reporting requirement was not met. In the second policy period, the claim made requirement was not met. Does that address your question? Kind of. But my question to you is, in your entire argument, you've only argued about one policy period, and the judge's order talks about the second policy period. Why are you not discussing that? It seems to me that your view is more narrow, that because there was no notice ever given under the first policy, that everything that flows from that is forbidden. No, Your Honor. Under the second policy period, our position is that there was no new claim made. So it's not a matter of notice or reporting. Under the 2004-2007 policy period, it's a matter of the coverage trigger that a claim needs to be made during the policy period. And the amended complaint, any other developments within the Newman litigation, new legal theories raised, et cetera, are not new claims,  commenced by the filing of a complaint. Okay. Thank you very much, Mr. Vandervliet. Let me ask Justice Welsh if he has any further questions. No further questions, Your Honor. Okay. Justice Barberis? No, thank you. Okay. Thank you for your argument, Mr. Vandervliet. Obviously, this is a very interesting case. Mr. Niemeyer, would you like to respond? I would, Justice Cates. I think the question from the judges reflects the catch-22 that P&B was in. We had a breach of contract claim filed against us in 2003, which, again, under Illinois law, breach of contract claims are typically not covered by insurance policies. And here, they're expressly excluded from coverage. So we didn't report it. And then in the fall of 2004, we find that the Newmans are going to bring tort claims against us. They're going to amend their third-party complaint to bring a conversion and breach of fiduciary duty count. We then timely tender that claim to our insurance carrier, F&D, and they deny it. So the question is, what were we supposed to do under this situation? And, again, when that breach of contract claim was filed, it didn't trigger coverage, as Mr. VanderWijk mentioned. There was no insurable loss. I will also state that Mr. VanderWijk mentioned this is a claims-made and reported policies. There's nothing to indicate in the policies themselves to reflect that. The policies themselves identify themselves as claims-made policies. The cases that he mentioned that talk about claims-made policies are all factually distinguishable, Your Honors. You know, when some of these cases involve an amended pleading that raised, you know, after an amended pleading was filed, the insured then tenders that claim. But in those cases, Your Honors, the original pleading actually raised a cover claim. Here, there's no dispute that the original third-party complaint, there was no cover claim. Mr. Niemeyer, could you address the court's reliance on Market Street bank shares? Sure. F&D asked this court to apply collateral estoppel, and the circuit court never addressed the issue of collateral estoppel below. Collateral estoppel does not apply because the issues decided by the Seventh Circuit and Market Street, they're not identical to the issues presented here. Could you wait one moment? We'll have the clerk stop. We lost Mr. Vandervliet for a moment. Were you still on the recording? Mr. Vandervliet? Yes, I think I lost the recording for a second there, but I'm here now. Thank you. Mr. Niemeyer, if you can remember your thought. Yes, thank you. Proceed, and we'll give you a few extra minutes. Right. And collateral estoppel applies only to issues actually litigated and decided. Not to matters that might have been litigated or decided. Now, the party asserting collateral estoppel bears a heavy burden of showing with clarity and certainty the identical issues. If there's any uncertainty because there's more than one distinct issue of fact was presented to the court, collateral estoppel doesn't apply. Market Street involved an entirely different issue based on a different insurance policy with different terms with a different insurance company. Now, the issue in Market Street was whether the Newman's damages argument at trial fell within the coverage of the policies. The issue in this case is whether P&B provided reasonable notice. The Seventh Circuit did not address whether an uncovered claim had to be reported under a policy, which is the issue before this court. Now, even if the issues were identical, which they're not, the doctrine of collateral estoppel should not apply unless it's clear that there's no unfairness with results. Here, P&B did not have a full and fair opportunity to litigate the issue when a claim was first made in the Newman's third-party action because that was not pertinent to the issues presented to the Seventh Circuit and Market Street. Therefore, we think it'd be inappropriate to apply the doctrine of collateral estoppel to the facts of this case. Is there anywhere in the court's order where you think collateral estoppel was applied other than the court agrees with the reasoning set forth in Market Street bank shares? No, the Circuit Court's ruling did not expressly state that it was applying the doctrine of collateral estoppel. I believe F&D just raised it as an alternative argument before this court since it was briefed before the Circuit Court. I see. Okay, thank you. Do any of the justices have questions for me? Justice Welch? No questions. Justice Barberis? No. Okay, do you have any other comments? I would just ask that this honorable court reverse the Circuit Court's judgment on the pleadings in this case, Your Honor. All right, thank you, Mr. Nehmeyer. Thank you, Mr. Vanderbilt. As I indicated, this is a difficult case, so we appreciate your arguments here today. The matter will be taken under advisement and we will issue an order in due course Have a great day.